

## UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

United States of America,                    CRIMINAL COMPLAINT

v.
                                             CASE NUMBER:    17-9478 MJ
Jianhong Ke

                    Defendant.

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

See Attachment A, Charges, incorporated by reference herein.

I further state that I am a Criminal Investigator with the Drug Enforcement Administration (DEA), and that this complaint is based on the following facts:

See Attachment B, Statement of Probable Cause, incorporated by reference herein.

Continued on the attached sheet and made a part hereof:   X Yes    No

AUTHORIZED BY:  AUSA Glenn B. McCormick  GBM/9-23-2017

Special Agent Kyle Stalder, DEA
Complainant                                  Signature of Complainant

Sworn to before me and subscribed in my presence,

Date: September 23, 2017                at   Phoenix, Arizona

HON. EILEEN S. WILLETT
United States Magistrate Judge
Name & Title of Judicial Officer             Signature of Judicial Officer

## ATTACHMENT A

## COUNT 1

**Conspiracy to Launder Monetary Instruments**

On or about September 22, 2017, in the District of Arizona, and elsewhere, JIANHONG KE and others, did knowingly combine, conspire, confederate and agree together, to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which in fact involved the proceeds of specified unlawful activity, that is, Conspiracy to Possess with Intent to Distribute Controlled Substances in violation of Title 21, United States Code, Sections 846, and 841(a)(1), (1) with the intent to promote the carrying on of said specified unlawful activity, and (2) knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity, and while knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

17-9478 MJ

## AFFIDAVIT IN SUPPORT OF TRACKING DEVICE WARRANT

1. Your Affiant, Special Agent Kyle Stalder of the United States Drug Enforcement Administration, Phoenix, Arizona, being duly sworn, hereby deposes and states as follows:

## INTRODUCTION AND BACKGROUND OF AFFIANT

2. Your Affiant, Kyle Stalder, is employed by the Drug Enforcement Administration (DEA). Your Affiant is an investigator or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and empowered by law to conduct investigations and make arrests for offenses enumerated in Title 21, United States Code, pursuant to Section 878 of that Title.

3. Your Affiant has been a Special Agent with DEA since September 2014 and is currently assigned to the DEA Phoenix, Arizona, Field Division Office ("DEA Phoenix"). From September 2014 to February 2015, your Affiant attended the DEA 20-week training academy in Quantico, Virginia. While at the DEA training academy, your Affiant received instruction in investigative techniques, drug identification, physical surveillance, undercover negotiations, telecommunication investigations, and drug-related law. Your Affiant is currently assigned to the Organized Crime Drug Enforcement Task Force (OCDETF)/Strike Force One in Phoenix, Arizona. The OCDETF Strike Force is tasked with disrupting and dismantling major drug-trafficking organizations through the collaborative investigative efforts of federal, state, and local law enforcement agencies. From December 2009 to September 2014, your Affiant was employed as a Police Officer with the City of Salem Police Department in Salem, Oregon. From March 2010 to June 2010, your Affiant completed a 16-week training academy at the Oregon Department of Public Safety and Standards Training ("DPSST") Academy in Salem, Oregon. From September 2007 to December 2009, your Affiant was employed as a Federal Air Marshal with the United States Federal Air Marshal Service in Los Angeles, California. From September 2007 to January 2008, your Affiant completed

an 18-week training academy that was split between the Federal Law Enforcement Training Center ("FLETC") in Artesia, New Mexico and the Federal Air Marshal Training Academy in Atlantic City, New Jersey. Your Affiant holds a bachelor's of science degree in Criminal Justice and a Masters of Business Administration from California Lutheran University.

4. As a DEA Special Agent, your Affiant's duties and responsibilities include conducting criminal investigations of large-scale drug trafficking organizations. Your Affiant has previously participated in investigations that resulted in the arrests, searches, and seizures of individuals and property. By virtue of my employment as a Special Agent with DEA and a Police Officer with the Salem Police Department, your Affiant has performed various tasks, which include, but are not limited to the use of cooperating sources, undercover agents, pen register/trap and trace devices, video surveillance, wiretaps, mobile tracking devices, search warrants, and audio surveillance, among other law enforcement techniques. Additionally, your Affiant has participated in numerous controlled buys of narcotics from targets of law enforcement investigations.

5. Your Affiant has spoken to individuals about the methods and practices of people involved in illegal drug production. These people include users of illegal drugs, sellers of illegal drugs, confidential informants, and experienced federal, state, and local narcotic officers. All of these types of sources of information have provided your Affiant with objective details of the methods and practices of illegal drug production and distribution, and related laundering of drug proceeds.

6. The statements contained in this Affidavit are based in part on information provided to your Affiant by Special Agents of the DEA, and other law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; information from a Confidential Source; financial documents; interviews; and analysis of telephone toll records.

7. Your Affiant also relies on his experience, training, and background as a Special Agent with the DEA in evaluating this information. Because this Affidavit is being submitted for the limited purpose of providing probable cause in support of a Complaint for Money Laundering crimes, not every fact known to your Affiant regarding this investigation is included in this Affidavit.

## PROBABLE CAUSE STATEMENT

8. On May 30, 2017, at approximately 3:00 pm, your Affiant and fellow investigators set up on surveillance of Jianhong KE at the Crown Plaza Hotel in Phoenix, Arizona. Investigators confirmed through an administrative subpoena that KE was staying there. At approximately 3:30 pm, you Affiant observed KE arrive in the parking lot driving a rental car. He exited the vehicle carrying a black backpack over his shoulder and entered the hotel. Surveillance was terminated at approximately 8:30 pm.

9. On May 31, 2017, investigators set up surveillance on the rental car and at approximately 9:05 am, identified KE depart the parking lot. Investigators followed him to a Fry's Electronics where investigators observed him return a Cassida Bill Counter. Investigators then followed KE to a Wells Fargo ATM where he was observed depositing money into the ATM machine. Investigators then followed him to the Phoenix Sky Harbor Airport Rental Car Return area and investigators terminated surveillance.

10. As investigators terminated surveillance on KE, additional investigators arrived at the hotel and confirmed with management that KE had checked out of room #601. Investigators were given permission by hotel management to enter room #601. Upon entering the room, investigators located clear and blue wrappings with the word "ART" written in black writing. Investigators also located a white piece of paper ripped up in the trash can that was pieced back together with the words, "Phoenix 05/30/2017, 16.000."

11. Investigators found what they believed to be an alias for KE in the name of Yang CAO (KE). Investigators reviewed banking transaction reports for the Phoenix area on the dates that KE was staying at the Crowne Plaza Hotel in Phoenix, May 30 & 31, 2017. Investigators found that on May 30, 2107, CAO (KE) made a $65,000 deposit at a Bank of America, 2902 N 44th Street, Phoenix, Arizona. Also on May 30, 2017, CAO (KE) made a deposit of $65,640 at a Bank of America, 4402 E Camelback Road, Phoenix, Arizona. It should be noted that the Bank of America's utilized by CAO (KE) are approximately five and seven miles respectively from the Crown Plaza Hotel where he was staying at that time. Other similarities investigators found included that CAO (KE) listed his occupation as, "student" on the deposit forms and provided the email address QWE77520@gmail.com, the same email address KE provided on the hotel guest registry at the Crown Plaza Hotel and in KE's deposit information found in the banking transaction reports.
12. Investigators reviewed all of the banking transaction reports for CAO (KE) and found that between May 2, 2017 and June 25, 2017, CAO (KE) made nineteen deposits to numerous accounts at different locations throughout the United States that totaled $1,080,890. The deposit locations included California, Florida, Arizona and New Mexico. Three of the deposits occurred on June 12, 2017, at three separate Bank of America banking institutions in Tucson, Arizona that totaled $185,000.
13. All of the banking transaction reports indicate CAO (KE) provided Chinese passport #G34796997 as identification to the banking institutions. On July 25, 2017, investigators inquired with the Department of State and learned that Chinese passport #G34796997 is not a valid passport number.
14. On September 22, 2017, investigators discovered that KE travelled to Tucson, Arizona, and was staying at the Country Inn and Suites near the airport. Investigators set up surveillance on the hotel parking lot and discovered that KE was staying in room 227. Investigators also obtained a hotel room across from KE's room.
15. At approximately 3:54 pm, investigators observed a gray Toyota arrive in the parking lot and a Hispanic male driver, and only occupant, exited the vehicle with a backpack.

4 .

Surveillance observed this unknown subject enter room 227. Less than five minutes later, the subject left room 227 and was observed returning to his vehicle with an empty bag folded up under his arm. At approximately 4:05 pm, SA Brent Coup walked past room 227 and could hear a bill money counter being utilized in the room. SA Coup advised the door to the room was slightly open.

16. A few minutes later, KE exited his room with a backpack and got into a white Malibu rental car that was in the parking lot. At this time, your Affiant and other investigators contacted KE. He immediately cooperated with investigators. When asked he advised he had money in the backpack and more money in his room. Investigators seized the backpack from his vehicle and discovered the backpack contained U.S. currency. Investigators asked for consent and KE granted consent to go back to his hotel room so investigators could interview him and search his room. In a suitcase in the room, investigators located a bill money counter and additional bulk U.S. currency. Once in the room, KE advised an additional subject was supposed to be delivering money to him but he did not know how much money it would be.

17. In his hotel room, he was advised of his Miranda warnings and he signed a DEA form "Advice of Rights." KE advised he had been picking up money since May of this year and so far had picked up approximately 1.8 million dollars. On this occasion, he said he was going to deposit the money found in his backpack into two different bank accounts. He said there was $9,800 in his backpack. He said he was going to utilize the fictitious passport that he had in the backpack to conduct the deposits. This passport was a Chinese passport with the last name LIU and first name Haidong but the photo was of KE. At first KE said he didn't know where the money came from but after being confronted he admitted that he knew it was from drug sales. KE said the subject he worked for that provided him the passports works for drug traffickers. KE said the money in his suitcase that also contained the money counter was approximately $110,000. He said he was going to drive this money back to California

and turn it over to an unknown person. KE said he was being paid one percent of the total amount that he collected.

18. With KE's consent, your Affiant coordinated with an unknown female through a series of text messages to drop off currency at the hotel room. Before receiving the room number, the female advised that she was in the lot in a Ford Escape. Investigators observed this vehicle pull into the lot just prior to her text message. The female for unknown reasons left the lot and investigators conducted a traffic stop on her vehicle. She was identified by her Arizona driver's license as Olivia MARTINEZ. She advised she had money in the bag on her floorboard. She gave verbal consent to search her vehicle. In addition to the money in the bag on the floorboard, investigators found a suspected drug ledger in the middle console of her vehicle. She said she thought the money in her bag on the floorboard was $120,000. She said it was not her money and she was doing a favor for a subject she only knew as "Guero." She was detained and after a post Miranda interview she was released at the scene of the traffic stop. Investigators seized her cell phone, a suspected drug ledger and the bulk U.S. currency. Most of the bulk currency was bundled with rubber bands, was wrapped in shrink wrap and had numbers written on the shrink wrap with a black marker indicating the amount.

19. KEY is a Chinese National that is in the United States on a student VISA. He advised that he graduated from UCLA in May of 2017 and does not intend to get any additional schooling. He said that he does not have any immediate family in the U.S. He said he does not have a legitimate job and his only source of income was from student loans and payments for picking up and depositing the money. KEY currently lives in Los Angeles, California.

KYLE STALDER
Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me this 23 day of September, 2017.

Sworn telephonically 9/23/2017 4:40pm

HONORABLE EILEEN S. WILLETT
United States Magistrate Judge